IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| RAFFI SHAHABIAN<br>Sinking Spring, PA 19608 | CIVIL ACTION NO. |
| Plaintiff, | |
| v. | |
| WORLEYPARSONS GROUP, INC.<br>2675 Morgantown Rd.<br>Reading, PA 19607 | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

### I.   INTRODUCTION

Plaintiff, Raffi Shahabian, brings this action against his former employer, WorleyParsons Group, Inc. pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII"); and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"). Plaintiff seeks his economic damages, compensatory damages, punitive damages, attorneys fees and costs, and all other legal and equitable remedies available under state or federal law for the age and national origin discrimination that he had endured.

### II.   PARTIES

1.   Plaintiff, Raffi Shahabian, is an individual and a citizen of the Commonwealth of Pennsylvania, residing in Sinking Spring, PA, 19608.

2.   Plaintiff was born in Lebanon.

3.      Plaintiff was born in August, 1951.

4.      Defendant, WorleyParsons Group, Inc. is a Delaware business corporation with a principal place of business at 2675 Morgantown Rd., Reading, PA 19607.

5.      Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

6.      At all times material hereto, Defendant employed more than twenty (20) employees.

7.      At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

8.      At all times material hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

9.      At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

## III.   JURISDICTION AND VENUE

10.     The causes of action which form the basis of this matter arise under the ADEA, Title VII, and the PHRA.

11.     The District Court has jurisdiction over Count I (ADEA) pursuant to 29 U.S.C. §626(c).

12.     The District Court has jurisdiction over Count I (ADEA) and Count II (Title VII) pursuant to 28 U.S.C. §1331.

13.     The District Court has jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. §1367.

14.     Venue is proper in the District Court under 28 U.S.C. §1391(b).

15.     On or about December 26, 2012, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of acts of discrimination alleged herein.  This Charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").  Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

16.     On or about March 25, 2014, at Plaintiff's request, the EEOC issued to Plaintiff a Dismissal and Notice of Rights.  Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of that notice (with personal identifying information redacted).

17.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.     FACTUAL ALLEGATIONS

18.     Plaintiff was hired by Gilbert Commonwealth, the predecessor to Defendant, on or around April 15, 1991 as Program Manager.

19.     Throughout twenty-one (21) years of employment with Defendant and its predecessors,  Plaintiff was a loyal, dedicated and hard-working employee.

20.     In or about 2004, Defendant purchased Gilbert Commonwealth and

3

Plaintiff became an employee of Defendant.

21.    As of 2004, Plaintiff's title was Senior Project Manager.

22.    In or about 2008, Plaintiff was promoted to Manager of Nuclear Projects.

23.    Subsequently, the Nuclear Projects responsibilities were split among four managers, including Plaintiff, all reporting to Jack DeVine, General Manager for Nuclear Services among Eastern Operations.  Plaintiff was the Director for the Eastern Projects within this group.

24.    The vast majority of Defendant's employees and Engineers and Project Managers both nationwide and in Eastern Operations were older.  A large percentage were over sixty years old.

25.    Defendant expressed concern about its older workforce, which it referred to euphemistically as "the pronounced age demographic and sustainability challenges of our workforce."

26.    As a result, Defendant placed a premium on attracting, retaining, and advancing younger employees, to the detriment of older employees. Examples included:

   a) In or about 2010, Chris Ashton was named the Senior Vice President for Eastern Operations.  Mr. DeVine, who reported to Mr. Ashton, told Plaintiff that one of Mr. Ashton's expectations was "out with the old, in with the new."

   b) Mr. DeVine told Plaintiff that he (Plaintiff) was the oldest employee on his leadership team and that he had to explain to Mr. Ashton why he was still holding on to Plaintiff while "newer" people were waiting in the wings.

   c) Mr. DeVine asked Plaintiff if Plaintiff had a problem serving with other "junior" personnel reporting to him.

d) In a November, 2010, Mr. DeVine made a presentation to Defendant's Global Nuclear Leadership Team which addressed the aging population of Defendant's Engineers and Project Managers. The presentation referred to Defendant's Accelerated Career Development System ("ACDS"), which was an attempt to "confront the pronounced age demographic and sustainability challenges of our workforce." Other efforts explicitly focused on younger employees, such as a "lunchtime Project Management training" for "young engineers."

e) In approximately August 2011, Mr. DeVine's replacement, Mark Campagna, informed Plaintiff that Defendant had assigned him the responsibility of bringing in "young" and "new" blood. Mr. Campagna also said that he had told one of his direct supervisors that the (older) employees with whom he was working were extremely qualified and needed to remain in their positions in the leadership team. He told Plaintiff that this pushback was received negatively.

27.     In approximately December, 2011, only months after Mr. Campagna told Plaintiff that his pushback to Defendant's goal of bringing in young workers was not well-received, Defendant terminated Mr. Campagna.

28.     After Mr. Campagna's termination, Walt McFarland became the General Manager of Nuclear Services and became Plaintiff's supervisor.

29.     In approximately October, 2011, Plaintiff received his last annual performance evaluation from Defendant.  He scored the maximum forty points for his personal achievements, plus an extra ten points (the maximum) for "outstanding contribution and performance in an area above and beyond role expectations."  In addition, the evaluation noted that, prior to his retirement, Mr. DeVine had reported on Plaintiff's performance as "Delivered results beyond expectations.  Particularly pleased with results at PSEG and VCS.  Very solid delivery.  Steady under pressure, solid professional, excellent technical and

functional knowledge (above the scale)."

30.     In approximately March, 2012, Mr. McFarland was promoted to General Manager of the Eastern Region, the position that had once been held by Mr. Ashton.

31.     Despite the glowing evaluation Plaintiff had received only months earlier, he was not selected to fill the General Manager of Nuclear Projects position.

32.     Instead, Ray Pearsall was chosen to become General Manager.

33.     Mr. Pearsall was born in the United States of America.

34.     Not too long ago before his promotion, Mr. Pearsall reported to Plaintiff, and had exhibited marginal performance compared to the ~15 peers reporting to the Plaintiff.

35.     Upon his promotion to General Manager of Nuclear Services, Mr. Pearsall became Plaintiff's supervisor.

36.     Plaintiff's national origin was a motivating and determinative factor in connection with Defendant's failure to select him for the General Manager of Nuclear Services position.

37.     Mr. Pearsall subjected Plaintiff to a hostile work environment based upon his age and national origin.  By way of example:

   a) Mr. Pearsall spent significant time discussing work with his other younger, American direct reports. In contrast, although Plaintiff's office was a few steps away from his office, Mr. Pearsall did not speak to Plaintiff unless he made a formal appointment with him.

   b) On business trips, Mr. Pearsall invited other younger, American direct reports out for a drink. Mr. Pearsall did not invite Plaintiff to these gatherings.

    c) Mr. Pearsall encouraged advancements and promotions of American peers and did not do the same for Plaintiff.

    d) Plaintiff's supervisors called him by the names of other non-American employees.

    e) Other employees commented to Plaintiff that Mr. Pearsall often used a negative and uncalled for tone with Plaintiff.

38.    On or about April 23, 2012, approximately four weeks after Mr. Pearsall became Plaintiff's supervisor (and only about six months after Plaintiff's positive annual performance evaluation), Mr. Pearsall placed Plaintiff on a Performance Improvement Plan ("PIP").

39.    Prior to being placed on this PIP, Plaintiff had not been told that his performance was in any way unsatisfactory.

40.    The alleged performance deficiencies and criticisms described in the PIP were unfounded.

41.    Around the same time that he placed Plaintiff on the PIP, Mr. Pearsall told Plaintiff that the other Nuclear General Managers before him had been expected to "get rid of" Plaintiff but had been unable to do so.

42.    Mr. Pearsall also said that he was removing Plaintiff from his current position.

43.    Also in or about April, 2012, Mr. Pearsall was looking to fill a new Operations Manager position.

44.    Plaintiff told Mr. Pearsall that he was interested in the new Operations Manager position.

45.    Plaintiff was qualified for the Operations Manager position, as its

duties were similar to duties he had previously performed.

46.     Mr. Pearsall refused to place Plaintiff in this position, and confirmed this decision on or about May 10, 2012.

47.     Mr. Pearsall selected Bill Gattoni for the Operations Manager position.

48.     Mr. Gattoni is American.

49.     Mr. Gattoni is substantially younger than Plaintiff.

50.     Plaintiff's age and national origin were motivating and determinative factors in connection with Defendant's failure to give the Operations Manager position to Plaintiff.

51.     Mr. Pearsall selected Curt Jurgens as Director of Eastern Projects, replacing Plaintiff.

52.     Mr. Jurgens is younger than Plaintiff.

53.     Mr. Jurgens is American.

54.     When Mr. Jurgens took Plaintiff's position, Plaintiff was demoted to a Senior Project Manager position.

55.     Mr. Pearsall told Plaintiff that Plaintiff needed to "think about" what he wanted to do, and offered him an impractical transfer to a position in Canada.

56.     During Mr. Jurgens first meeting with Plaintiff and his other direct reports, Mr. Jurgens said words to the effect that "I don't know if you guys realize it, but we have too many old managers" and that he "may be the youngest one in the room."

57.     On another occasion, Mr. Jurgens commented to Plaintiff that the

average project manager age was 62 years old, and that Defendant "need[s] new, younger personnel."

58.     On or about June 7, 2012, Mr. Pearsall formally completed the demotion of Plaintiff, claiming that, because Plaintiff would not relocate to Canada, "reporting to Curt Jurgens as a Senior Project Manager in the Reading office is the only available opportunity available in Nuclear Project management for you."

59.     Mr. Pearsall moved Plaintiff's office to another floor and, despite a number of open offices, ordered Plaintiff to share a workspace with a significantly younger junior project manager and to "teach him what a good Project Manager should know".

60.     On or about November 8, 2012, Defendant terminated Plaintiff as part of an alleged reduction in force.

61.     Defendant claimed that "we have been unsuccessful in identifying anticipated full time job chargeable work requirements that meet your location requirements, and there are no immediate prospects for project assignment in Eastern Operations."

62.     Defendant's alleged reasons for Plaintiff's termination are a pretext for age and national origin discrimination.

63.     Plaintiff's age (then 61) was a motivating and determinative factor in connection with Defendant's termination of him.

64.     Plaintiff's national origin (Lebanese) was a motivating and determinative factor in connection with Defendant's termination of him.

65.    At the time of Plaintiff's termination, and contrary to Defendant's claims of lack of work, Plaintiff was actively booked and working on projects for V.C. Summer and PPL Susquehanna.

66.    At the time of Plaintiff's termination, Greg Foust had not had billable work for approximately seven months and had been charging his time to overhead costs.

67.    Mr. Foust was retained by Defendant while Plaintiff was terminated.

68.    Mr. Foust was approximately fifty-four (54) years old at the time of Plaintiff's termination.

69.    Mr. Foust is American.

70.    Mr. Foust replaced Plaintiff on the V.C. Summer and PPL Susquehanna projects.

71.    Defendant has discriminated against other older employees in terms of hiring, demotions and promotions, and terminations, seeking to replace older workers with younger workers.

72.    Defendant failed to prevent or address the harassing and discriminatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of harassing and discriminatory and retaliatory conduct.

73.    The age discrimination that Plaintiff suffered was severe or pervasive and created a hostile work environment.

74.    The national origin discrimination that Plaintiff suffered was severe or pervasive and created a hostile work environment.

75.     As a direct and proximate result of the discriminatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## COUNT I - ADEA

76.     Plaintiff incorporates herein by reference paragraphs 1 through 75 above, as if set forth herein in their entirety.

77.     By committing the foregoing acts of discrimination against Plaintiff, Defendant has violated the ADEA.

78.     Said violations were willful and warrant the imposition of liquidated damages.

79.     As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

80.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

81.     No previous application has been made for the relief requested herein.

## COUNT II – TITLE VII

82.     Plaintiff incorporates herein by reference paragraphs 1 through 81 above, as if set forth herein in their entirety.

83.     By committing the foregoing acts of discrimination against Plaintiff, Defendant has violated Title VII.

84.     Defendant acted with malice and/or reckless indifference toward the federally protected rights of Plaintiff and its conduct warrants the imposition of punitive damages.

85.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein.

86.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and unlawful acts unless and until this Court grants the relief requested herein.

87.     No previous application has been made for the relief requested herein.

## COUNT III – PHRA

88.     Plaintiff incorporates herein by reference paragraphs 1 through 87 above, as if set forth herein in their entirety.

89.     Defendants, by the above improper and discriminatory acts, have violated the PHRA.

90.     Said violations were intentional and willful.

91.     As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

92     Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory acts unless and until the Court grants the relief requested herein.

93.     No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of the ADEA;

(b)     declaring the acts and practices complained of herein to be in violation of the Title VII;

(c)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(d)     enjoining and permanently restraining the violations alleged herein;

(e)     entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(f)     awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(g)    awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(h)    awarding liquidated damages to Plaintiff under the ADEA;

(i)    awarding punitive damages to Plaintiff under Title VII;

(j)    awarding Plaintiff such other damages as are appropriate under the ADEA, Title VII, and the PHRA;

(k)    awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and,

(l)    granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.


**CONSOLE LAW OFFICES LLC**


Dated:    May 23, 2014          BY: _Carol A. Mager_

Carol A. Mager
James M. Duttera
1525 Locust St., 9th Floor
Philadelphia, PA 19102
(215) 545-7676
(215) 545-8211 (fax)

Attorneys for Plaintiff,
Raffi Shahabian

# EXHIBIT 1

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | FEPA<br>x   EEOC | *530-2013-01070* |

| STATE OR LOCAL AGENCY: _____ PHRC | | |
|---|---|---|

| NAME (Indicate Mr., Ms., Mrs.)<br>**Raffi Shahabian** | HOME TELEPHONE NUMBER *(Include Area Code)*<br>▬▬▬ |
|---|---|

| STREET ADDRESS<br>▬▬▬ | CITY, STATE AND ZIP<br>**Sinking Spring, PA 19608** | DATE OF BIRTH<br>▬▬▬ |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**WorleyParsons Group Inc.** | NUMBER OF EMPLOYEES, MEMBERS<br>**>500** | TELEPHONE (Include Area Code) |
|---|---|---|

| STREET ADDRESS<br>2675 Morgantown Road | CITY, STATE AND ZIP<br>Reading, PA 19607 | COUNTY<br>**Berks** |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Race   Color   Sex   Religion   **XX National Origin**<br>Retaliation   **XX Age**   Disability   Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>**11/8/2012**<br>*Earliest*                    *Latest*<br><br>Continuing Violation |
|---|---|

THE PARTICULARS ARE:

A.   1. Relevant Work History

I was born on August 10, 1951 in Lebanon. I am currently sixty-one (61) years of age.  I was hired by Gilbert Commonwealth, the predecessor to Respondent, on or around April 15, 1991 as Program Manager. In approximately 1993, my title changed to Project Manager and in approximately 2001, I was promoted to Senior Project Manager with responsibility for the two largest nuclear clients. In approximately 2004, Respondent purchased Gilbert Commonwealth/Parsons E&C and in 2008, I was promoted to Principal Project Manager and began reporting to Jerry Goldsmith, Vice President (American). Mr. Goldsmith reported to Dan Martin, Regional Manager, Eastern Region (American). Respondent replaced Dan Martin with Chris Ashton (British) in 2009. Mr. Ashton replaced Mr. Goldsmith with Jack DeVine (American) and I began reporting to Mr. DeVine in December, 2009. In approximately March 2011, I began reporting to Mark Campagna, General Manager of Nuclear Services (American). After Mr. Campagna was terminated in December 2011, I reported to Walt MacFarland, General Manager of Nuclear Services (American) until March 2012, when Mr. MacFarland was promoted to General Manager of the Eastern Region.


*All ages herein are approximate.

| X I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br><br>I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct. | |

| x Dec. 22, 2012   *Raffi Shah*<br>Date:          Charging Party *(Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |
|---|---|

**EEOC Charge of Discrimination**
**Page 2 of 5**
**Raffi Shahabian v. WorleyParsons Group Inc.**

In March 2012, Ray Pearsall (American), a former direct report of mine, became the General Manager of Nuclear Services, and my direct supervisor. In his new position, Mr. Pearsall reports to Mr. MacFarland, who in turn reports to Chris Parker, Managing Director of United States and Caribbean (American).

Throughout my twenty-one (21) years of employment with Respondent, I was a loyal, dedicated and hard-working employee. Prior to reporting to Mr. Pearsall, I consistently received positive evaluations in my performance reviews. In addition, every year I worked for Respondent, I received annual raises. In 2008, I was added to Respondent's yearly bonus program.

2.    Harm Summary

I believe that Respondent discriminated against me based on my national origin (Lebanon), age (61), and a combination thereof, including subjecting me to a hostile work environment.  Evidence of discriminatory conduct includes, but is not limited to, the following:

a)  In March, 2012, Respondent failed to promote me to the General Manager position. Instead, Respondent placed Ray Pearsall, a white, American, former direct report of mine, into this position, and I began reporting to Mr. Pearsall.

b)  Approximately four weeks after Mr. Pearsall became my direct supervisor, he placed me on a Performance Improvement Plan ("PIP") on or about April 23, 2012.

c)  Prior to being placed on this PIP, all feedback on my performance had been positive.

d)  In May, 2012, Mr. Pearsall failed to promote me to the position of Manager of Operations.

e)  When I informed Mr. Pearsall that I was interested in this position, he told me that he "wasn't going to promote me." Mr. Pearsall did not provide me with any further explanation and instead promoted Bill Gattoni, a younger, American employee who had been with Respondent for approximately six months, to this position.

f)  Respondent demoted me and decreased my compensation on or about June 7, 2012.

g)  Prior to being demoted, I was one of seven (7) employees reporting to Mr. Pearsall. I was either the oldest or the second oldest direct report of Mr. Pearsall. The seven employees reporting to Mr. Pearsall were:

     i.  Joe Scerbo, American;

    ii.  George Dyer, American;

   iii.  Andy Kamada, American;

   iv.  Curt Jurgens, American;

EEOC Charge of Discrimination
Page 3 of 5
Raffi Shahabian v. WorleyParsons Group Inc.

    v.  Bill Bailey, American;

    vi.  Kirk Noonan, American; and

    vii.  Myself, Lebanese.

h) After Respondent demoted me, all of Mr. Pearsall's direct reports were white and American.

i) Respondent terminated me on or about November 8, 2012 and informed me that the reason for my termination was "lack of work," despite the fact that I had billable work for several months and was in the midst of selling more work. To the best of my knowledge, I was the only employee terminated by Respondent.

j) After I was terminated, Greg Foust (54, American), a less qualified employee, assumed my former duties.

k) Respondent treated me differently than other, younger American employees. By way of example only:

    i.  Mr. Pearsall spent significant time discussing work with his other younger, American direct reports. In contrast, although my office was a few steps away from his office, Mr. Pearsall did not speak to me unless I made a formal appointment with him.

    ii.  On business trips, Mr. Pearsall invited other younger, American direct reports out for a drink. Mr. Pearsall did not invite me to these gatherings.

    iii.  Mr. Pearsall encouraged advancements and promotions of my American peers (Mr. Dyer, Mr. Jurgens, and Mr. Gattoni for example) and did not do the same for me.

    iv.  My supervisors called me by the names of other non-American employees. To the best of my knowledge, my supervisors did not call American employees incorrect names.

l) Respondent has a bias against older employees. Evidence of this bias includes, but is not limited to, the following:

    i)  In approximately August 2011, Mr. Campagna informed me that Respondent assigned him the responsibility of bringing in "young" and "new" blood. Mr. Campagna informed me that he struggled with reconciling that goal with the goal of having the most qualified individuals on the team. Mr. Campagna also informed me that he had told Mr. Ashton,

one of his direct supervisors, that the (older) employees with whom he was working were extremely qualified and needed to remain in their positions in the leadership team. Mr. Campagna told me that his pushback was not well received by Respondent. In December 2011, Respondent terminated Mr. Campagna.

ii)   In a presentation Mr. DeVine made to Respondent's Global Nuclear Leadership Team, he presented slides addressing the aging population of Respondent's Engineers and Project Managers. Mr. DeVine referred to Respondent's Graduate Development Plan, which recruited and nurtured graduate engineering students, in an attempt to attract and retain younger employees at Respondent.

iii)  Mr. DeVine told me that one of Mr. Ashton's expectations was "out with the old, in with the new." I interpreted that to mean that Respondent was looking for a way to replace older employees with younger employees.

iv)   Mr. DeVine told me that I was the oldest employee on his leadership team and that he had to explain to Mr. Ashton why he was still holding on to me while "newer" people were waiting in the wings.

v)    When Mr. DeVine interviewed me to be one of his direct reports, he asked me if I had a problem serving with other junior personnel reporting to him.

vi)   Respondent was developing an "Accelerated Career Development System" to "confront the pronounced age demographic" at Respondent.

B.        1.    Respondent's Stated Reasons

a)   Respondent's stated reason for terminating me was that there was a lack of work.

b)   Respondent has not offered any further explanation of its reason for terminating me;

c)   Respondent has not offered any reason for subjecting me to a hostile work environment;

d)   Respondent has not offered any reason for failing to promote me to the position of Manager of Operations. Respondent instead promoted Bill Gattoni, a younger, American, and less experienced employee.

e)   Respondent's stated reason for placing me on a Performance Improvement Plan was that "[d]uring the past months...[I was] "not performing [my] assigned work in accordance of what is expected of a Regional Manager."

**EEOC Charge of Discrimination**
**Page 5 of 5**
**Raffi Shahabian v. WorleyParsons Group Inc.**

f) Respondent has not offered any reason for demoting me; and

g) Respondent's stated reasons for my termination are pretextual. Respondent had billable work for me to do and I was actively leading three (3) projects. Respondent's stated reason for placing me on a Performance Improvement Plan is pretextual. My region generated the most revenue and gross profit for the most recent Fiscal Year and Respondent had recognized that I was on track to meeting my yearly objectives.

C.      1.      Statutes and Basis for Allegations

I believe that Respondent discriminated against me, including subjecting me to a hostile work environment based on my national origin (Lebanon), and my age (61) and a combination thereof, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, *et seq.* ("ADEA") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA").

INFORMATION FOR COMPLAINANTS & ELECTION OPTION
TO DUAL FILE WITH THE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**Raffi Shahabian v. WorleyParsons Group Inc.**

EEOC No. 530 2013 01070

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with the PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.

**[Sign and date appropriate request below]**

 X   I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

 X    *I understand that false statements in this complaint are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.*

                    X   _Raff Shahab___ Dec 23, 2012

                    Signature and Date (Raffi Shahabian)

# EXHIBIT 2

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Raffi Shahabian**

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

**Sinking Spring, PA 19608**

From:  **Philadelphia District Office**
**801 Market Street**
**Suite 1300**
**Philadelphia, PA 19107**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2013-01070** | **Legal Unit** | **(215) 440-2828** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[  ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[  ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[  ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

3/25/14

Enclosures(s)

**Spencer H. Lewis, Jr.,**
**District Director**

(Date Mailed)

cc:  **Renee Brock**
**Vice President**
**WORLEY PARSON GROUP, INC.**
**2675 Morgantown Road**
**Reading, PA 19607**

**Stephen G. Console, Esq.**
**CONSOLE LAW OFFICES**
**1525 Locust Street**
**9th Floor**
**Philadelphia, PA 19102**